UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LUYDMILA STARKEY, | Case No. 5:14-cv-02525-PSG |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| JOHN M. MCHUGH, SECRETARY OF THE DEPARTMENT OF THE ARMY, | **(Re: Docket Nos. 33, 50)** |
| Defendant. | |

Both parties in this case agree that Wayne Lord, a former sergeant at the Presidio of Monterey Police Department ("POMPD"), sexually harassed Plaintiff Luydmila Starkey while they worked together at POMPD in 2011 and 2012. Where they disagree is whether the Department of the Army responded appropriately to his conduct and her complaint. Specifically, Defendant John M. McHugh, in his capacity as Secretary of the Department of the Army, moves for summary judgment: (1) that Starkey has not presented sufficient evidence that she reported her harassment, as she was required to do under Title VII; (2) that Starkey has not presented sufficient evidence to support her allegation of a retaliatory hostile work environment resulting from her sexual harassment complaint and (3) that Starkey has not presented sufficient evidence to support her allegation of retaliatory termination resulting from her complaint. Because the court is convinced

1

Case No. 5:14-02525-PSG
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

that genuine issues of material fact remain on all three issues, the Secretary's motion is DENIED in its entirety.[1]

**I.**

Title VII of the Civil Rights Act of 1964[2] prohibits employers from discriminating against employees on a variety of grounds, including sex. The law applies to the federal government generally and the Department of the Army specifically.

Starkey began working for the Army at POMPD as a trainee police officer in May 2010.[3] In May 2011, she began an administrative assignment where she worked closely with Lord.[4] Although her assignment largely was to help Lord with his duties, formally her supervisor was Lord's wife, Nevada.[5] From June to August 2011, Starkey attended training at the Federal Law Enforcement Academy in Missouri.[6] Upon her return in August 2011, because of her pregnancy and a back injury she had suffered at the academy, she was assigned to light duty, which again involved working with Lord.[7] Starkey took parental leave from January until May or June of 2012.[8] Upon her return, she was placed on administrative status, which once again required her to work with Lord.[9] This assignment continued until she was sent to a field training program in July 2012.[10]

---

[1] Starkey also has moved under Fed. R. Civ. P. 56(d) to deny or delay summary judgment to allow sufficient time to gather additional evidence. Given the court's disposition of the motion for summary judgment, the court DENIES Starkey's Rule 56(d) motion as moot.

[2] *See* 42 U.S.C. §§ 2000e to 2000e-17.

[3] *See* Docket No. 33-2 at 25:11-13, 27:13-19.

[4] *See* Docket No. 33-20 at ¶ 7.

[5] *See* Docket No. 33-18 at ¶ 4.

[6] *See* Docket No. 33-2 at 34:19-35:5; Docket No. 33-20 at ¶ 7.

[7] *See* Docket No. 33-20 at ¶ 8.

[8] *See id.* at ¶ 11.

[9] *See* Docket No. 33-2 at 35:22-36:24.

[10] *See* Docket No. 33-20 at ¶ 11.

Lord began harassing Starkey around the time she started working with him in May 2011.[11] He made suggestive and inappropriate comments to her in person and in phone calls, and he sent her texts that grew increasingly sexual in nature.[12] These continued even though she told him to stop on several occasions.[13] In January 2012, during a meeting about her impending parental leave, Starkey's husband, Larry, recalls telling Stephen Krueger, who was in charge of Operations at POMPD, that Lord had been sending Starkey communications that were "'very' or 'extremely' inappropriate."[14] Lord did stop contacting Starkey while she was on leave.[15] Nevertheless, he resumed harassing her when she returned in June 2012, despite her repeated requests to stop.[16] Finally, on July 6, 2012, Lord sent Starkey an email containing a close-up photo of his penis and a nude picture of himself.[17]

Starkey went on sick leave immediately.[18] On July 12, she obtained a temporary restraining order against Lord;[19] on August 24, she filed a formal EEO complaint.[20] Meanwhile, her attorney sent a copy of the restraining order and Lord's email to John Chaffee, the Deputy Chief of POMPD.[21] On July 13, Lord was placed on administrative leave pending an investigation, and he submitted his resignation hours later.[22] Starkey returned to work in December 2012, but felt

---

[11] *See* Docket No. 33-2 at 80:22-25; Docket No. 67 at ¶ 5.

[12] *See* Docket No. 33-2 at 81:3-87:23, 109:18-20; Docket No. 67 at ¶ 5; Docket No. 68.

[13] *See* Docket No. 33-2 at 86:23-87:23; Docket No. 68 at ID Nos. 13054, 13352, 13437.

[14] Docket No. 72 at ¶ 10; *see* Docket No. 33-3, Ex. B, at 60:13-61:2.

[15] *See* Docket No. 33-3, Ex. B, at 62:24-63:6.

[16] *See* Docket No. 68 at ID Nos. 20323, 21660, 21696, 21735, 21744, 21746, 21770.

[17] *See* Docket No. 69; Docket No. 33-2 at 158:24-159:16.

[18] *See* Docket No. 33-2 at 162:8-10, 167:23-169:21.

[19] *See* Docket No. 33-7 at Ex. 7.

[20] *See* Docket No. 33-7 at Ex. 9.

[21] *See* Docket No. 56 at 14:16-20,

[22] *See* Docket No. 33-10 at ¶ 11.

unwelcome.[23] She was now reporting directly to Krueger so she would not have to report to Nevada Lord, the wife of her harasser, but Starkey remembers Krueger telling her that he did not trust her and would not speak to her without a witness present.[24] She took additional leave from January 2013 until May 2013.[25] Around the time that she was scheduled to return, she requested leave once again.[26] POMPD denied her request and issued her a notice of termination.[27]

This suit followed. Starkey alleges that the Department of the Army is liable to her under Title VII for sexual harassment and sex discrimination.[28] She also alleges that POMPD retaliated against her for her complaints by creating a hostile work environment and firing her.[29]

## II.

This court has jurisdiction under 28 U.S.C. § 1331. The parties further consent to the jurisdiction of the undersigned under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).

## III.

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Material facts are those that may affect the outcome of the case.[30] A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.[31] All evidence must be viewed in the light most favorable to the non-moving

---

[23] *See* Docket No. 33-2 at 255:8-22.

[24] *See* Docket No. 33-2 at 248:2-249:4.

[25] *See* Docket No. 67 at ¶¶ 18-19.

[26] *See id.* at ¶¶ 19-20.

[27] *See id.* at ¶¶ 21-24.

[28] *See* Docket No. 1 at ¶¶ 40-57.

[29] *See id.* at ¶¶ 58-64.

[30] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

[31] *See id.*

4

Case No. 5:14-02525-PSG
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

party. At this stage, a court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."[32] Initially, the moving party bears the burden to show that no genuine issue of material fact exists.[33] If this burden is met, the burden shifts to the non-moving party.[34] Applying these standards to each of Starkey's claims and the evidence in the record, there is no doubt that a reasonable jury could find in Starkey's favor.

*First*, there are triable issues of fact as to whether the Army is liable for Lord's harassment. A reasonable jury could find that Lord was Starkey's supervisor. He directed her work assignments, filled out at least initial versions of her performance evaluations and, though he was not officially her supervisor, his wife was. This is sufficient evidence to create a genuine issue of fact as to whether, as a practical matter, he was "empowered to take tangible employment actions against" Starkey.[35] Even if Lord was not Starkey's supervisor, a reasonable jury could find that the Army is nevertheless liable based on its negligence in controlling her working conditions.[36] At the very least, there is a genuine dispute of fact regarding whether Larry Starkey told Krueger—a POMPD employee who unquestionably played a supervisory role—about Lord's sexual harassment in January 2012. As Starkey points out, if Larry Starkey did complain to Krueger, the latter was then under a duty to report the complaint and investigate. His failure to do so could lead a jury to conclude that POMPD was negligent in failing to ensure safe working conditions for Starkey.

---

[32] *House v. Bell*, 547 U.S. 518, 559-60 (2006).

[33] *See Celotex Corp. v. Caltrett*, 477 U.S. 317, 323-24 (1986).

[34] *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 630, 630 (9th Cir. 1987).

[35] *See Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2443 (2014) (holding that an employee can qualify as a supervisor if the employee is "empowered to take tangible employment actions against the victim"). Examples of tangible employment actions include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.*

[36] *See id.* at 2439.

The Army nevertheless points to *Faragher v. Boca Raton*[37] and *Burlington Indus., Inc. v. Ellerth*.[38] In these cases, the Supreme Court held that if a harasser is a supervisor, so long as no tangible employment action was taken against the victim, the employer can avoid liability by demonstrating that it instituted reasonable preventative and corrective measures and that the employee failed to take advantage of these measures to counter the harassing behavior. POMPD had a variety of anti-harassment training classes and policies, and Starkey never brought a formal complaint until over a year after the harassment began.

But there remain factual issues about whether the Army qualifies for the *Faragher*/*Ellerth* defense. Putting aside whether the Army took tangible adverse employment action against Starkey, in light of Lord's history of harassment, both at POMPD and earlier,[39] a reasonable jury could find that POMPD did not take reasonable care to protect potential new victims. Indeed, it put Lord in close contact with trainees despite that history. A reasonable jury also could find that Starkey's failure to file an EEO complaint until August 2012 was reasonable under the circumstances. When the harassment began, she was only a trainee, and her immediate supervisor was her harasser's husband. She may well have acted reasonably by not rocking the boat so early in her career. In fact, her husband, who had been a law enforcement officer for over fifteen years, advised her not to do so.[40] Instead, she told Lord to stop, and her husband unofficially interceded on her behalf with Krueger. Once Lord's conduct escalated from verbal and written harassment to

---

[37] 524 U.S. 775 (1998).

[38] 524 U.S. 742 (1998).

[39] In 2003, Lord was accused of inappropriate sexual behavior towards female service members while he was on patrol. *See* Docket No. 33-14 at ¶ 6. After a formal complaint and an investigation, POMPD disciplined Lord for violating POMPD's sexual harassment policy. *Id.* In 2005, POMPD investigated Lord after a female driver complained that he had followed her, but it concluded that he did not behave inappropriately. *Id.* ¶ 7. Lord's previous military record—which POMPD obtained as part of its background check when hiring him—also shows several instances of alleged sexual harassment and misconduct while he was with the Marine Corps from 1998 to 2000. *See* Docket No. 46.

[40] *See* Docket No. 72 at ¶ 6.

sending her the nude photo, she took action within a week. Whether this course of action was reasonable under the circumstances is an issue for the jury to decide.[41]

***Second***, there are triable issues of fact regarding Starkey's retaliation claim. With regard to Starkey's hostile work environment claim,[42] mere "ostracism at the hands of coworkers cannot constitute an adverse action."[43] With regard to her termination claim, the Army also points to the fact that POMPD had legitimate, nondiscriminatory reasons for firing Starkey. She failed to return to work when her leave expired and did not apply for a renewal of leave until later, although by then she knew the appropriate procedures. For both claims, the Army argues that Starkey cannot establish a causal link between the actions and her complaint, as the Ninth Circuit has required.[44]

But Starkey has produced evidence that Krueger said that she "would never be coming back to POM" and that Chaffee said "it was better that [Starkey] was not here."[45] She also alleges that Krueger, now her immediate supervisor, told her directly that he did not trust her.[46] When she requested leave again in May 2013, her request was denied without a reason being stated.[47]

---

[41] Starkey also argues that the Army can be liable on a theory of quid pro quo discrimination, which a complainant establishes "by showing that a supervisor explicitly or implicitly conditioned a job, a job benefit, or the absence of a job detriment, upon an employee's acceptance of sexual conduct." *Holly D.*, 339 F.3d at 1169 n.15. However, the Ninth Circuit has held that "such unconditional liability attaches only if a quid pro quo threat is implemented by some form of sufficiently concrete employment action." *Id.* at 1170. This implementation only occurs "when the supervisor actually coerces sex" or actually takes an adverse employment action because of the employee's failure to submit. *Id.* Here, Starkey did not accede to Lord's requests, and Lord did not take any employment action against her in response. Therefore, under *Holly D.*, there was no quid pro quo discrimination.

[42] The Army argues initially that her hostile work environment claim is time barred because she failed to contact an EEO counselor within 45 days, as required by federal regulations. *See* 29 C.F.R. § 1614.105. As Starkey points out, however, she has asserted a single, unitary claim for retaliation. She timely exhausted her administrative remedies with respect to at least the termination.

[43] *Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000).

[44] *See Vasquez v. City of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2004).

[45] Docket No. 73 at ¶ 9.

[46] *See* Docket No. 33-2 at 248:2-249:4.

[47] *See* Docket No. 67 at ¶ 21.

7
Case No. 5:14-02525-PSG
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Moreover, at least as far as Chaffee knew, she never received official notification of her AWOL status.[48] A reasonable jury could infer from this evidence that POMPD responded to her complaint by creating a hostile work environment and eventually firing her. Whether the negative work environment rose to the level of retaliatory harassment and whether POMPD fired her for legitimate reasons are genuine factual disputes. The court must leave the determination of these disputes to a jury.

**SO ORDERED.**

Dated: September 9, 2015

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[48] *See* Docket No. 56 at 286:17-288:2.

Case No. 5:14-02525-PSG
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT